Scott KEMPA, Plaintiff,

v.

E.W. COONS COMPANY, et al., Defendants and Third Party Plaintiffs.

CLARK EQUIPMENT COMPANY, defendant and third party plaintiff, Respondent,

v.

UNITED STATES STEEL CORPORATION, third party defendant, Appellant.

No. C1-86-232.

Court of Appeals of Minnesota.

July 22, 1986.

John J. Killen, Johnson, Killen, Thibodeau & Seiler, Duluth, for respondent.

Frederick A. Dudderar, Jr., Hanft, Fride, O'Brien, Harries, Swelbar & Burns, Duluth, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

PARKER, Judge.

This appeal involves the calculation of an employer's subrogation claim under the Minnesota Worker's Compensation Act. U.S. Steel appeals from a judgment which determined that all of its subrogation interest, including worker's compensation benefits it had already paid, was to be reduced to present value. We reverse and remand.

## FACTS

The facts of this case are completely recited in *Kempa v. E.W. Coons Co.*, 370 N.W.2d 414 (Minn.1985). For purposes of this appeal, Scott Kempa brought an action against Clark for damages resulting from a work related accident involving a fork-lift truck manufactured by them. U.S. Steel, Kempa's employer, was impleaded by Clark, seeking contribution. The jury found Clark 80 percent at fault, U.S. Steel 20 percent at fault and awarded Kempa approximately $5.8 million in compensatory damages.

Kempa and Clark entered into a post-trial settlement, and U.S. Steel continued to pursue its subrogation claim against Clark. On appeal, the supreme court held that an employer's subrogation claim must be calculated pursuant to Minn.Stat. § 176.061, subd. 6 (1984), and explicitly directed how the calculation was to be performed.

Specifically, the supreme court stated that an employer's total subrogation interest consisted of the net reimbursement for compensation benefits paid plus the properly calculated credit against benefits to be paid in the future. This amount is to be offset by Clark's contribution claim for the negligent employer's proportionate share of fault applied to the employee's damages, and "[t]he remainder, reduced to present value, is payable in a single lump sum." *Kempa,* 370 N.W.2d at 420.

On remand the trial court determined, pursuant to stipulation, that U.S. Steel's net reimbursement for compensation benefits paid was $278,437 and that its credit for future benefits was $1,717,523 for a total subrogation interest of $1,995,960. U.S. Steel's equitable share of the verdict (its contribution obligation) was $1,154,718. Offsetting the two amounts, the trial court determined that Clark's obligation to U.S. Steel was $841,242.

Based upon a stipulated discount rate of 10 percent, the trial court reduced the entire $841,242 to its present value, arriving at a figure of $176,958. Judgment was entered against Clark in this amount.

## ISSUE

After offsetting U.S. Steel's subrogation interest with its contribution obligation, did the trial court err in reducing the entire remainder to its present value?

## DISCUSSION

U.S. Steel argues that the supreme court in its *Kempa* opinion could not have intended to reduce to present value a sum which included both paid [1] and future worker's compensation benefits. U.S. Steel concludes, therefore, that only its credit against future benefits should be offset by its proportionate share of the verdict (its contribution obligation) and that it should thus receive full payment from Clark for the worker's compensation benefits it has already paid.

We agree that the supreme court did not intend that the remainder of the employer's subrogation interest and its contribution obligation was to be reduced *in its entirety* to present value. The employer's total subrogation interest under *Kempa* consists of both paid and future compensation benefits. This subrogation interest is to be offset, dollar for dollar, by U.S. Steel's contribution obligation. The "remainder" of the subrogation interest includes both benefits paid and those payable in the future.

Generally, only damage amounts due in the future are reduced to "present value" through the use of a discount rate. *See* D. Dobbs, *Law of Remedies* § 3.5, at 178 (West 1973); *Wilken v. International Harvester Co.*, 363 N.W.2d 763, 767 (Minn. 1985) (only future worker's compensation benefits are reduced to present value when calculating employer's future contribution obligation). Indeed, the "present value" of benefits already paid is their *full value*. Thus, to the extent that the remainder of the employer's subrogation interest and its contribution obligation included compensation benefits already paid by the employer,

we do not think the supreme court intended that those benefits already paid would be reduced to "present value." *See Kempa*, 370 N.W.2d at 420.

This does not mean, however, that the compensation benefits U.S. Steel has already paid should not be offset by U.S. Steel's contribution obligation. The supreme court clearly instructed in *Kempa* that the full amount of the employer's subrogation interest (i.e. both paid and future benefits) was to be offset by its contribution obligation. This instruction comports with the supreme court's earlier statement in *Wilken* that a "negligent employer's contribution obligation is used to offset that employer's right of subrogation for benefits paid *and* its right of credit for future benefits payable." *Id.*, 363 N.W.2d at 767 (emphasis added).

■ It would seem apparent, then, that the "remainder" between U.S. Steel's subrogation interest and its contribution obligation was correctly determined by the trial court to be $841,242. It also seems apparent that the figure includes some amount of paid benefits which should not properly be discounted.

■ We conclude that the supreme court intended that only the proportion of the "remainder" which consists of future compensation benefits is to be reduced to present value; that proportion of the remainder which consists of benefits already paid should not be discounted and must be paid in full. Since *Wilken* makes clear that a negligent employer's contribution obligation (derived from a verdict composed of both past and future damages) offsets both paid *and* future benefits, the proportion of paid to future benefits in the "remainder" will be the same as the proportion of paid to future benefits in the employer's total subrogation interest.

Here, U.S. Steel's total subrogation interest is $1,995,960 and its "paid benefits"

---

1. We recognize that, under *Kempa*, U.S. Steel's subrogation interest does not include *all* the benefits it actually paid to its employee, but includes only its "net reimbursement" (benefits paid minus employer's proportionate share of costs). *Kempa*, 370 N.W.2d at 420 n. 3. In the interest of clarity, however, we refer to this "net reimbursement" as *paid benefits* in this opinion.

(actually, its "net reimbursement") are $278,437, or 14 percent of its total subrogation interest. U.S. Steel's credit for future benefits is $1,717,523, or 86 percent of its total subrogation interest. The percentages are the same in the "remainder" of $841,242. Therefore, Clark's obligation to U.S. Steel consists of the full value of the proportion of paid benefits in the remainder (.14 × $841,242) *plus* the proportion of future benefits in the remainder, reduced to present value ([.86 × $841,242] reduced to present value). This calculation complies with the supreme court's instructions in *Kempa* and *Wilken* and also harmonizes the apparent logical inconsistency of reducing to present value damages which have already been paid.

## DECISION

On remand the trial court will determine the present value of the proportion of the remainder which consists of U.S. Steel's credit for future compensation benefits and add that amount to the full value of the proportion of the remainder which consists of U.S. Steel's "paid benefits." Judgment against Clark should be entered in that total amount.

Reversed and remanded.